IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JOSEPHINE HAWKINS** | \* |
| Plaintiff, | \* |
| v. | \* Civil No. PJM 15-2169 |
| **MV TRANSPORTATION, INC.,** | \* |
| Defendant. | \* |

## MEMORANDUM OPINION

Josephine Hawkins has sued MV Transportation, Inc. (MV Transportation), alleging sex discrimination in employment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*. She filed her complaint (ECF No. 1), *pro se*, on July 24, 2015. After a number of problems with service of process, Hawkins filed a Return of Summons on June 10, 2016, showing service of the summons (and presumably the Complaint) on the Corporate Trust Company, registered agent for MV Transportation. The Court independently confirmed that the Corporate Trust Company is the registered agent for MV Transportation, and that it had in fact received the summons and forwarded it to their principal. However, MV Transportation did not answer or enter an appearance in the case. Accordingly, the Clerk of the Court entered a Default in favor of Hawkins. Hawkins has now filed a Motion for Default Judgment (ECF No. 22), seeking $24,240 in back pay and compensatory damages, as well as $300,000 in punitive damages.

For the following reasons, Hawkins' Motion for Default Judgment (ECF No. 22) is **GRANTED IN PART** and **REVISED IN PART**, limiting the amount of damages she requests.

## I. FACTUAL AND PROCEDURAL HISTORY

Hawkins began her employment with MV Transportation[1] in November 2005. Aff. of Hawkins, ECF No. 22-1. As of March 2012, Hawkins served as a Lead Road Supervisor, at a salary of $19 per hour over a forty hour week, plus benefits including four weeks of paid vacation per year. *Id.* In 2012, Hawkins began working for a new supervisor, Dwayne Hendricks. *Id.* At the time Hendricks became Hawkins' supervisor, there were five other Lead Road Supervisors, all of whom were male. Compl., Attachment 1, ECF No. 1-1. Aff. of Hawkins. Hawkins had the second most seniority of the six. Aff. of Hawkins.

Hawkins alleges that Hendricks treated her differently from the other Lead Road Supervisors solely because of her sex. He treated her as if she were of a lower job position than she in fact was. Compl., Attachment 1. Aff. of Hawkins. For example, whenever Hawkins was assigned to the same shift with another Lead Road Supervisor (i.e., a male colleague), the male colleague was always placed in charge. Compl., Attachment 1. Conversely, when Hendricks assigned two males to the same shift, he would place the male with more seniority in charge. Aff. of Hawkins. Hendricks also required Hawkins to travel a great distance to pick up her work vehicle, while at the same time he allowed her male colleagues to pick up their work vehicles close to their homes. Compl., Attachment 1. Aff. of Hawkins. Additionally, Hendricks never

---

[1] Hawkins alleges that MV Transportation employs more than 500 employees and operates more than 130 locations across North America. *See* Compl. 3; Mtn. for Def. Judgment, 7. On its website, MV Transportation states that it "operates more than 200 locations across North America" and is "the #1 contracted paratransit provider in North America." See MV Transportation, Inc. website (April 6, 2017, 2:33 PM), http://www.mvtransit.com/aboutmv, http://www.mvtransit.com/paratransit. It was reported in 2012 that MV Transportation had "an employee count of 17,000." Dallas Business Journal, *MV Transportation acquires Scottish firm*, http://www.bizjournals.com/dallas/news/2012/06/04/mv-transportation-acquires-scottish-firm.html (April 6, 2017, 2:38 PM). *See also* Benzinga, *The Top 21 African-American CEOs in Business*, https://www.benzinga.com/general/entrepreneurship/14/04/4440816/the-top-21-african-american-ceos-in-business#/slideshow-0 (April 6, 2017, 2:41 PM) ("[T]he company employs more than 17,000 workers and operates more than 190 paratransit, fixed-route, shuttle and Medicaid contracts.").

scheduled Hawkins to the same shift as Road Supervisors (i.e., those employees she would be responsible for supervising). Compl., Attachment 1. Aff. of Hawkins. In contrast, her male counterparts would often be charged with supervising four to six Road Supervisors. Compl., Attachment 1. Aff. of Hawkins.

Due to this mistreatment on the basis of her sex, Hawkins made several complaints to Hendricks. Aff. of Hawkins. All of these complaints were ignored, and Hendricks dismissed her concerns and acted maliciously toward her as a result. *Id.*

After a year of alleged mistreatment, Hawkins brought her concerns to MV Transportation's Human Resources Department, which did nothing to alleviate the situation. *Id.*

On March 17, 2013, Hawkins claims she was constructively discharged from her position at MV Transportation, being unable to continue in the discriminatory work environment. Compl., Attachment 1. Aff. of Hawkins. For approximately two weeks thereafter, Hawkins was unemployed. Aff. of Hawkins. In April of 2013, Hawkins secured employment at First Transit in Capital Heights, Maryland. *Id.* However, she had to take a position as Road Supervisor rather than Lead Road Supervisor. *Id.* Accordingly, her salary was $17 per hour (as compared to $19 per hour at MV Transportation) and she was entitled to only two weeks of paid vacation per year (as compared to four weeks per year at MV Transportation). *Id.*

Hawkins filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in 2014. Compl., Attachment 2, ECF No. 1-2. The EEOC investigated her charge and concluded that Title VII had not been violated. *Id.* On April 24, 2015, the EEOC issued Hawkins a right to sue letter giving her 90 days from the date she received the letter to file suit in federal court. Compl., Attachment 4, ECF No. 1-4.

On July 24, 2015, Hawkins, *pro se*, filed a Complaint in this Court raising the same allegations that she made before the EEOC. ECF No. 1. She seeks monetary damages in the amount of $300,000. *Id*. at 4.

After a number of problems with service of process, Hawkins filed a Return of Summons on June 10, 2016. ECF No. 16. According to the Return, the Summons was served personally on June 9, 2016 on Matthew Bartynski of the Corporate Trust Company, MV Transportation's Resident Agent. *Id*. MV Transportation failed to file an answer within 20 days and has not done so since. Just to verify, the Court called MV Transportation's Resident Agent and spoke to a representative in the Service of Process department who confirmed that Corporation Trust had received the Complaint and Summons and forwarded it to MV Transportation. The Court then attempted to phone MV Transportation at the location listed in Hawkins' Complaint, but there was no answer. The Court also called other MV Transportation offices in the United States and spoke with an employee at one franchise who suggested that all Maryland locations may no longer be in operation. The Court then obtained the name and telephone number of the General Manager of MV Transportation's Baltimore location and left multiple voicemails that he should contact the Court, but never received a response.

On August 12, 2016, the Court sent a letter to Hawkins, informing her that she might be entitled to seek default judgment and instructing her to advise the Court if she would like for the Court to appoint an attorney to assist her with this process. Hawkins requested that the Court appoint an attorney to assist her (ECF No. 17) and the Court appointed Jeremy R. Feldman, Esquire, as counsel (ECF No. 18). Hawkins, through Feldman, subsequently filed a Motion for Clerk's Entry of Default (ECF No. 20). The Clerk of the Court entered a Default in favor of Hawkins on November 4, 2016 (ECF No. 21), and Hawkins filed a Motion for Default Judgment

(ECF No. 22) on March 21, 2017, seeking $24,240 in back pay and compensatory damages as well as $300,000 in punitive damages.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Nevertheless, default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

The Court takes as true the well-pleaded factual allegations in the Complaint as to liability, but not as to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). In order to determine the appropriate damage award, the court may hold a hearing to prove damages, but it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. 09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested."); *DirecTV Inc. v. Yancey*, 2005

WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits").

Fed. R. Civ. P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

### III. ANALYSIS

Here, taken as true, Hawkins' allegations clearly establish liability on the part of MV Transportation for unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964.[2] Her allegations indicate that she was treated differently than her male colleagues and that because of this mistreatment and MV Transportation's failure to mitigate the discrimination, she was constructively discharged. Accordingly, the Court finds that Hawkins has established a valid claim for sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*

---

[2] "It is well settled that a person alleging claims under Title VII must file a lawsuit within 90 days of receipt of the notice of right to sue." *Kramer v. Bd. of Educ. of Baltimore Cty.*, 788 F. Supp. 2d 421, 424 (D. Md. 2011). *See* 42 U.S.C. § 2000e–5(f)(1). Here, Hawkins filed a charge of discrimination with the EEOC in 2014. Although the EEOC was unable to conclude that a violation occurred, it issued Hawkins a right to sue letter on April 24, 2015. Hawkins had 90 days from the date she received the letter to file suit in federal court. Assuming Hawkins received the EEOC letter the day after it was mailed, she had until July 24, 2015 to file suit. Hawkins filed her Complaint on July 24, 2015. Accordingly, her filing was timely.

In her Motion for Default Judgment, Hawkins seeks $24,240 in back pay and compensatory damages as well as $300,000 in punitive damages.

Because her Complaint demands a specific amount of damages, the Court cannot award damages beyond the $300,000 sought in the Complaint. *See In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir.2000). At the same time, Hawkins has not presented sufficient evidence to support her claim for punitive damages in an amount as high as $300,000. That said, Hawkins is entitled to back pay damages, compensation for lost vacation days, including pre-judgment interest, and a lesser amount of punitive damages.

### A. Back Pay

"Back pay relief is authorized under Section 706(g) of Title VII. 42 U.S.C. § 2000e–5(g)(1). The Supreme Court has recognized a presumption in favor of back pay awards to victims of employment discrimination." *E.E.O.C. v. CDG Mgmt., LLC*, 2010 WL 4904440, at *4 (D. Md. Nov. 24, 2010) (*citing Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)). The Fourth Circuit has noted that "a Title VII Plaintiff is generally entitled to back pay 'as a matter of course.'" *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir.1995).

"To make the plaintiff whole, the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the period of termination to judgment, and the actual earnings during that period." *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 389 (D. Md. 1997). *See also* 42 U.S.C. § 2000e–5(g)(1).

In the present case, this amounts to what Hawkins would have earned if she still worked at MV Transportation ($19 per hour for forty hours per week from March 17, 2013 until the date of judgment; i.e., 211 weeks x 40 hours per week x $19 per hour = $160,360) minus her actual

earnings during that period ($17 per hour for forty hours per week[3] from April 1, 2013 until the date of judgment; i.e., 209 weeks x 40 hours x $17 per hour = $142,120).[4] This comes to $18,240.[5]

### B. Fringe Benefits

In addition to back pay damages, an employee wrongfully discharged on the basis of sex discrimination may also recover "lost fringe benefits such as vacation pay and pension benefits." *United States v. Burke*, 504 U.S. 229, 239 (1992). *See also Rivera v. Baccarat, Inc.*, 34 F. Supp. 2d 870, 876 (S.D.N.Y. 1999) ("[V]acation and sick time constitute benefits that should be included in a damage calculation under Title VII."); *Rasimas v. Michigan Dept. of Mental Health*, C.A.6 (Mich.) 1983, 714 F.2d 614, *certiorari denied* 104 S.Ct. 2151, 466 U.S. 950, 80 L.Ed.2d 537. The value of lost vacation days can be calculated "by taking the difference between the number of vacation and sick days to which [plaintiff] would have been entitled . . . and the number she received in her subsequent jobs and multiplying by the agreed upon value of each day of leave." *Rivera*, 34 F. Supp. 3d at 876.

Here, Hawkins is entitled to the value of two weeks' worth of vacation leave for each of the four years that she has been at her new job (i.e., 4 years x 2 weeks x 40 hours per week x $19 per hour). This amounts to $6,080.

The total in back pay and lost benefits Hawkins is entitled to is $24,320.

---

[3] While Hawkins does not explicitly allege how many hours per week she works at First Transit, based upon her calculations, the Court infers that she has continued to work 40 hours per week.

[4] This method of calculating back pay damages covers the two weeks that Hawkins was unemployed as well as her $2 per hour pay cut.

[5] An employee seeking back pay damages is under a duty to mitigate damages by making reasonable efforts to find other employment, and the award may be reduced by amounts that the employee could have earned with reasonable diligence. *See Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985). Here, given that Hawkins obtained new employment two weeks after she was constructively discharged, it is clear that she made such reasonable efforts. Accordingly, no reduction in award is necessary.

## C. Punitive Damages

42 U.S.C. § 1981a(b)(1) describes the circumstances under which punitive damages are available:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

"The Supreme Court has held that the terms 'malice' or 'reckless indifference' 'ultimately focus on the actor's state of mind.' Thus, punitive damages are appropriate when a person discriminates 'in the face of a perceived risk that [his] actions will violate federal law.'" *Cloud v. G.C.A. Int'l, Inc*, 2006 WL 2189698, at *5 (D. Md. Aug. 1, 2006) (quoting *Kolstad v. Am. Dental Ass'n,* 527 U.S.526, 535–536 (1999)). "The Supreme Court further held that 'while egregious misconduct is evidence of the requisite mental state, § 1981a does not limit plaintiffs to this form of evidence, and this section does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind.'" *Id.*

The Fourth Circuit has explained the punitive damages standard set forth in *Kolstad* as follows:

> When an employee has discriminated in the face of a known risk that his conduct will violate federal law, an employer may be held vicariously liable for a punitive damage award in a Title VII case for the intentionally discriminatory conduct of its employee, where the employee served the employer in a managerial capacity [and] committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good-faith efforts to comply with Title VII.

*Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 442 (4th Cir.2000).

Here, Hawkins has demonstrated that MV Transportation discriminated against her with reckless indifference, if not intentionally, as to her federally protected rights. She made several

complaints to MV Transportation employees serving in managerial roles. She first complained to her direct supervisor, Hendricks—the employee who perpetrated the discriminatory conduct—and later complained to two managers in the Human Resources Department. Each and every one of these employees totally ignored Hawkins' complaints and did nothing to protect her rights. These managers, while acting within the scope of their employment, turned blind eyes to the discrimination suffered by Hawkins. Accordingly, the Court is convinced that MV Transportation acted with reckless indifference to Hawkins' federal employment rights. *C.f. E.E.O.C. v. Crowder Constr., Inc.*, 2001 WL 1750843, at *15 (W.D.N.C. Oct. 26, 2001); *Kimbrough v. Loma Linda Dev., Inc.*, 183 F.3d 782, 785 (8th Cir. 1999) (concluding that defendant acted with reckless indifference when their employees "repeatedly ignored detailed and graphic complaints about [the] harassment"); *Howard v. Burns Bros.*, 149 F.3d 835, 844 (8th Cir. 1998) (summarizing the holding of *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 576 (8th Cir. 1997), stating that "[m]anagement's practice of turning a blind eye to repeated complaints of misconduct was sufficient to demonstrate 'reckless indifference'"); *E.E.O.C. v. Caterpillar Inc.*, 503 F. Supp. 2d 995, 1049 (N.D. Ill. 2007) ("Evidence that an employer refused to remedy or ignored complaints of harassment can establish an employer's lack of a good-faith effort to comply with Title VII.").

The Court, however, finds Hawkins' request for $300,000 in punitive damages excessive. Rather, the nature of MV Transportation's actions justifies an award of punitive damages in the amount of an additional $48,640.

The Court explains.

In order to calculate an appropriate punitive damage award, the Court has looked to the treble damage formula of the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl., §§

3-401 *et seq.*, which applies to cases in which a court determines that "an employer withheld the wage of an employee . . . not as a result of a bona fide dispute . . ." *See* Md. Code Ann., Lab. & Empl. § 3-507.2. The record demonstrates no bona fide dispute in the present case. Here, then, the award for back pay and compensatory damages totals $24,320 which, when multiplied by three, comes to $72,960. Accordingly, the Court awards Hawkins $48,640 in punitive damages—twice the amount awarded for back pay and compensatory damages. That makes Hawkins' total award, before pre- and post-judgment interest, $72,960. The punitive damage award remains below the statutory cap imposed by 42 U.S.C. § 1981a(b)(3), which limits the recovery for punitive damages to $300,000 for a defendant that has more than 500 employees.

### D. Pre-Judgment Interest

Hawkins seeks pre-judgment interest as part of the back pay remedy. "Consistent with Title VII's purpose of making victims of discrimination whole, the Court has the discretion to award prejudgment interest on any back pay award." *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 391 (D. Md. 1997) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975)). *See also Loeffler v. Frank*, 486 U.S. 549, 557, 108 S. Ct. 1965, 1970, 100 L. Ed. 2d 549 (1988) ("Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers."). "While not bound by state law, the court may choose to apply the interest rate provided for by state law." *Hylind v. Xerox Corp.*, 749 F. Supp. 2d 340, 351 (D. Md. 2010), *aff'd in part, rev'd in part and remanded,* 481 F. App'x 819 (4th Cir. 2012) (upholding application of Virginia pre-judgment interest rate) (citing *Quesinberry v. Life. Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir.1993). The legal rate of interest in Maryland is 6% per annum. Md. Const. art. III, § 57. In light of the purpose of Title VII, courts compound the interest annually instead of

11

awarding simple interest. "Common sense and the equities dictate an award of compound interest." *Hylind*, 749 F. Supp. 2d at 351.

Accordingly, the Court will award annually compounded pre-judgment interest at the rate of 6% on the $24,320 back pay and compensatory damages award.[6] This amounts to $2,387.60.

### E. Post-Judgment Interest

Hawkins also seeks post-judgment interest on any award of monetary damages entered by the Court. "Interest shall be allowed on any monetary judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, the Court will award post-judgment interest at the prevailing rate on the entire monetary judgment.

---

[6] Because compound interest calculations can get complicated, the Court will calculate the pre-judgment interest on the back pay and compensatory damages award as if the full amount that Hawkins would have earned over the course of a year was awarded at the end of that year, beginning on March 17, 2013—the date that Hawkins was constructively discharged.

But for Hawkins' constructive discharge, from March 17, 2013 to March 16, 2014, she would have earned $39,520 (52 weeks x 40 hours per week x $19 per hour). Instead, she earned $34,000 (50 weeks x 40 hours per week x $17 per hour). She would have also accrued an additional two weeks of paid vacation over that time, which is worth $1,520 (2 weeks x 40 hours per week x $19 per hour). Accordingly, on March 16, 2014, Hawkins would have earned $7,040 more than she actually did. Over three years (from March 16, 2014 to March 16, 2017) at 6% annually compounded interest, $7,040 amounts to **$1,344.75**.

From March 17, 2014 to March 16, 2015, Hawkins would have earned $39,520 (52 weeks x 40 hours per week x $19 per hour). Instead, she earned $35,360 (52 weeks x 40 hours per week x $17 per hour). That year, she would have also accrued an additional two weeks of paid vacation, worth $1,520 (2 weeks x 40 hours per week x $19 per hour). Accordingly, on March 16, 2015, Hawkins would have earned $5,680 more than she did in reality. At 6% annual compound interest, $5,680 amounts to **$702.05** over two years (from March 16, 2015 to March 16, 2017).

Similarly, she would have earned $5,680 more than she did from March 17, 2015 to March 16, 2016. At 6% annually compounded interest this amounts to **$340.80** in one year (from March 16, 2016 to March 16, 2017).

Altogether, then, Hawkins is entitled to **$2,387.60** in pre-judgment interest.

## IV. CONCLUSION

For the foregoing reasons, Hawkins' Motion for Default Judgment (ECF No. 22) is **GRANTED** in the total amount of $75,347.60 against MV Transportation. This total reflects $18,240 in back pay, $6,080 for lost fringe benefits, $2,387.60 in pre-judgment interest, and $48,640 in punitive damages. Post-judgment interest shall accrue at the recognized federal rate, beginning April 7, 2017 until the judgment is satisfied. A separate Order will **ISSUE**.

                                    /s/
                              PETER J. MESSITTE
                        UNITED STATES DISTRICT JUDGE

April 7, 2017